UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES DOUGLAS,

        Petitioner,                     Case No. 19-cv-10261
                                            Hon. Matthew F. Leitman

v.

CATHERINE BAUMAN,[1]

        Respondent.
_____/

## ORDER (1) DENYING AMENDED PETITION FOR A WRIT OF HABEAS CORPUS (ECF No. 11); (2) DENYING REQUEST FOR DISCOVERY AND EVIDENTIARY HEARING (ECF No. 41); (3) DENYING MOTION TO ALLOW ADDITIONAL EVIDENCE (ECF No. 44); (4) DENYING A CERTIFICATE OF APPEALABILITY; AND (5) GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner Charles Douglas is a state inmate in the custody of the Michigan Department of Corrections.  On January 25, 2019, Douglas filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.) Douglas later filed an amended petition. (*See* Am. Pet., ECF No. 11.)  In the amended petition, Douglas seeks relief from his convictions in the Wayne County Circuit

_____

[1] The proper respondent in a habeas action is the petitioner's custodian. *See* Rule 2(a), Rules Governing Section 2254 Cases, 28 U.S.C. § 2254.  Douglas is currently incarcerated at the Baraga Correctional Facility where Catherine Bauman is the Warden.  The Court therefore **DIRECTS** the Clerk of Court to amend the case caption to substitute Catherine Bauman as the Respondent in this action.

Court for first-degree criminal sexual conduct ("CSC-I"), Mich. Comp. Laws § 750.520b(1)(d)(ii); third-degree criminal sexual conduct ("CSC-III"), Mich. Comp. Laws § 750.520d(1)(b); unarmed robbery, Mich. Comp. Laws § 750.530; and assault and battery, Mich. Comp. Laws § 750.81.

The Court has carefully reviewed the amended petition and related state-court record and concludes that Douglas is not entitled to federal habeas relief.  The Court therefore **DENIES** Douglas' amended petition.   The Court further **DENIES** Douglas' request for discovery and an evidentiary hearing (ECF No. 41) and motion to allow additional evidence (ECF No. 44).  Finally, the Court **DENIES** Douglas a certificate of appealability, but it **GRANTS** him leave to proceed *in forma pauperis* on appeal.

## I

## A

Douglas' convictions arose from the sexual assault of a minor in Detroit, Michigan.   On February 18, 2015, a jury in the Wayne County Circuit Court convicted Douglas of CSC-I, CSC-III, unarmed robbery, and assault and battery. The Michigan Court of Appeals described the relevant facts underlying Douglas' convictions as follows:

> A jury convicted defendants [Charles and Kejuan Douglas], who are brothers, of sexually assaulting a 16–year–old female victim inside a van in an isolated Detroit neighborhood on August 16, 2013. Approximately one

2

month before the assault, the victim met Charles on Tagged.com, a free online social website, and on the day in question she decided to ask him for a ride to her Inkster home. The prosecution presented evidence that after Charles picked up the victim in a van, he then picked up Kejuan and another, unidentified man. Charles made several stops, including at a motel, where the victim informed him that she wanted to go home. Charles did not take her home, but instead parked on a dark street. Kejuan pulled the victim into the back of the van, and she was forced to perform fellatio on Kejuan while Charles simultaneously sexually assaulted her from behind. After this, Kejuan forced penile-vaginal sex upon her. When Kejuan finished, the unidentified man sexually assaulted the victim with defendants' encouragement. The victim was ultimately left on the street, but managed to take Charles's phone. As the victim was on the phone with 911, the van returned and Charles chased her to the porch of a house, attempting to retrieve his phone. Charles fled and the homeowner opened the door. DNA recovered from abrasions on the victim and a towel that Charles had used and left at the scene matched Charles's DNA profile. The prosecution also presented evidence that Charles's DNA was matched to DNA obtained in another sexual assault case in 2013, in which that victim, who identified Charles, similarly testified that she met Charles on Tagged.com, that he picked her up, and that he drove her to a house where she was sexually assaulted by him and several other men. Kejuan's defense theory at trial was that he was misidentified as an assailant. Charles, who testified on his own behalf, denied any wrongdoing, and claimed that he engaged in consensual sexual activity with the victim.

*People v. Douglas*, No. 327354, 2016 WL 6495285, at *1 (Mich. Ct. App. Nov. 1, 2016).

3

On March 9, 2015, the state trial court sentenced Douglas to time-served for the assault and battery conviction, ten to fifteen years in prison for the CSC-III and the robbery convictions, and a consecutive term of forty to ninety years in prison for the CSC-I conviction. (*See* State Ct. Sent. Tr., ECF No. 26-16, PageID.2073-2074.) The court memorialized that sentence in an Amended Judgment of Sentence that it entered on April 15, 2015 (the "April 2015 Judgment"). (*See* April 2015 Judgment, ECF No. 26-21, PageID.2276.)

Douglas thereafter filed a direct appeal to the Michigan Court of Appeals. He raised two claims: (1) that the state trial court abused its discretion when it admitted other-acts evidence and (2) that the state trial court erred when it departed upward from the sentencing guidelines. *See Douglas*, 2016 WL 6495285, at *3–5. On November 1, 2016, the Michigan Court of Appeals affirmed Douglas' convictions, but it remanded the case for reconsideration of Douglas' sentence in light of "significant changes to Michigan's sentencing scheme" that occurred "after [Douglas] was sentenced."[2] *Id.* at *1, *5. Douglas then filed an application for leave to appeal to the Michigan Supreme Court. On October 31, 2017, that court denied

---

[2] The Michigan Court of Appeals explained that on remand, the state trial court should follow the "procedure adopted in *United States v. Crosby*, 397 F.3d 103 (CA 2, 2005)." *Douglas*, 2016 WL 6495285, at *5. Under a so-called *Crosby* remand, a trial court decides "*whether* to resentence" the defendant and "should either place on the record a decision not to resentence, with an appropriate explanation, or vacate the sentence" and impose a new sentence. *Crosby*, 397 F.3d at 120 (emphasis in original).

the application because it was not persuaded to review the questions presented. *See People v. Douglas*, 902 N.W.2d 613 (Mich. 2017).  The case then returned to the state trial court for proceedings in connection with the sentencing remand that the Michigan Court of Appeals had ordered.

On remand, the state trial court declined to impose a different sentence upon Douglas, and it left intact the April 2015 Judgment. (*See* 3/30/2018 Hr'g Tr., ECF No. 26-17, PageID.2087.)  Douglas then filed a Claim of Appeal in the Michigan Court of Appeals. (*See* Claim of Appeal, ECF No. 26-22, PageID.2381.)  In that appeal, Douglas challenged the refusal of the trial court to impose a new sentence on remand. (*See id.*)

**B**

On January 25, 2019 – with his state-court appeal still pending before the Michigan Court of Appeals – Douglas filed a petition for a writ of habeas corpus in this Court. (*See* Pet., ECF No. 1.)  Douglas raised one claim arising out of the admission of other-acts evidence and a second claim seeking relief from his sentence. (*See id.*, PageID.5, 7.)

After Douglas filed the petition (and before Respondent took any action on the petition), Douglas asked this Court to stay the proceedings so that he could exhaust additional claims in state court. (*See* Mot., ECF No. 3, PageID.56-57.)  On

June 27, 2019, the Court granted Douglas' request and stayed these proceedings. (*See* Order, ECF No. 6.)

<strong>C</strong>

On November 12, 2019, the Michigan Court of Appeals again remanded Douglas' case to the state trial court for further proceedings related to Douglas' sentence. (*See* Mich. Ct. of Appeals Order, ECF No. 26-22, PageID.2380.) On May 20, 2020, with that remand still pending and unresolved, Douglas filed a motion for relief from judgment in the state trial court. (*See* State Ct. Mot., ECF No. 26-18.) In that motion, Douglas raised the following claims for relief:

I.   Defendant was denied const. right to due process and a fair trial, where the prosecutor used perjured testimony, misrepresented facts of evidence, failed to correct perjured testimony, violated discovery orders, by trial court.

II.  Defendant was denied his 6th Amend. right to effective assistance of counsel, where counsel failed to obtain a continuance, forensic scientist, object to prosecutor misconduct.

III. Trial court abused his discretion, by refusing to re-instruct the jury, and where trial court failed to correct the verdict form.

IV.  Defendant was denied his const. right to effective assistance of counsel, where counsel failed to investigate 2 state witnesses mental background and explore the witnesses declared incompetence due to their mental state.

V.   Defendant was denied his fed and state right to effective assistance of counsel, where counsel failed to object to erroneous jury instruction.

VI.    Defendant[']s rights to effective assistance of counsel where trial counsel failed to secure the testimony of witness known as "James", failed to preserve errors by objection, failed to subject the prosecutor's case to meaningful and adversarial testing.

VII.    Defendant has met the "good cause" and "actual prejudice" requirements of 6.508(D) ineffective assistance of counsel.

(*Id.*, PageID.2092.)

On December 16, 2020, the state trial court denied Douglas' motion for relief from judgment. (*See* State Ct. Order, ECF No. 26-19.) It concluded that Douglas' claims were procedurally defaulted because he had not "presented evidence as to why the issues presented in [the] motion . . . were not previously raised on appeal nor has he proven actual prejudice." (*Id.*, PageID.2201.) Alternatively, the trial court addressed some of Douglas' claims on the merits. (*See id.*, PageID.1197-2202.) Douglas then filed a delayed application for leave to appeal in the Michigan Court of Appeals. That court denied relief on the basis that Douglas "ha[d] failed to establish that the trial court erred in denying the motion for relief from judgment." (Mich. Ct. App. Order, ECF No. 26-23, PageID.2565.) Douglas applied for leave to appeal that decision to the Michigan Supreme Court, but that court denied relief under Michigan Court Rule 6.508(D). *See People v. Douglas*, 966 N.W.2d 373 (Mich. 2021). The Michigan Supreme Court also denied Douglas' motion for reconsideration. *See People v. Douglas*, 969 N.W.2d 24 (Mich. 2022).

**D**

In December 2021, the state trial court returned to the sentencing issue that remained unresolved following the Michigan Court of Appeals' remand. (*See* 12/15/2021 Resentencing Tr., ECF No. 26-20.)  It re-sentenced Douglas to eight to fifteen years in prison, each, for the CSC-III and unarmed robbery convictions and twenty-three years, nine months to fifty years in prison for the CSC-I conviction. (*See id.*, PageID.2258-2259.)  The trial court imposed that sentence and entered a new judgment of sentence on December 15, 2021 (the "December 2021 Judgment"). (*See* Dec. 2021 Judgment, ECF No. 26-24, PageID.2812-2814.)

**E**

In March 2022, Douglas returned to this Court and filed, among other things, two motions to re-open this case (*see* ECF Nos. 7, 9), a request to re-open this case and to amend his petition (*see* ECF No. 12), and an amended petition for a writ of habeas corpus (*see* ECF No. 11).  This Court granted the motions and directed that the amended petition be served on Respondent. (*See* Order, ECF No. 14.)  The amended petition raises the following six claims:

> I.      "The trial court violated Mr. Douglas'[] due process rights by allowing the prosecutor to introduce 404b evidence that was not discovered or disclosed until after jury selection, opening statements[,] and two days of trial." ("Habeas Claim I").

II. "Mr. Douglas' due process [rights were] violated when the prosecution used recognized false testimony to get inadmissible 404b uncharged evidence admitted during trial." ("Habeas Claim II").

III. "Mr. Douglas['] due process rights were violated when the trial court abused its discretion by, failing to re-instruct the jury at defense counsel[']s request regarding the alternative charge of CSC 2, not correcting the constitutional deficient jury verdict form as well as allowing insufficient evidence to support defendant's convictions of CSC 1, CSC 3 & unarmed robbery." ("Habeas Claim III").

IV. "Mr. Douglas was denied his Sixth Amendment constitutional right to the effective assistance of counsel, where defense counsel failed to: (A) [move] for continuance, adjournment, or a mistrial and (B) failed to investigate two of the state's witnesses['] mental background and explore the state[']s witnesses declared incompeten[t] due to their mental state." ("Habeas Claim IV").

V. "Mr. Douglas was denied his federal and state [constitutional] right to effective assistance of counsel where counsel failed to correct/object to the erroneous jury instructions." ("Habeas Claim V").

VI. "Mr. Douglas['] right to effective assistance of trial counsel [was] violated, where trial counsel failed to secure the testimony of res gestae witness, failed to preserve error by objection, failed to subject the prosecutor[']s case to meaningful adversarial testing, violating defendant[']s right to a fair trial, under [U.S. Const. Amend. VI] and Mich. Const. 1963 § 17, 20." ("Habeas Claim VI").

(Am. Pet., ECF No. 11-1, PageID.95-102.)

9

Instead of filing a responsive pleading addressing the claims that Douglas raised in the amended petition, Respondent filed a motion to dismiss for lack of subject-matter jurisdiction. (*See* Mot., ECF No. 25.)  Respondent argued that the Court lacked jurisdiction because at the time Douglas filed his initial habeas petition in this Court, his state court appeal from the April 2015 Judgment was still unresolved. (*See id*.)  Thus, Respondent argued, Douglas' judgment of sentence was not yet final at the time Douglas filed his habeas petition. (*See id.*)

On March 15, 2024, the Court denied Respondent's motion to dismiss. (*See* Order, ECF No. 31.)  The Court then directed Respondent to file a response to the amended petition. (*See id.*)  Respondent thereafter filed a response asserting that the Court lacks jurisdiction over the amended petition, that nearly all of Douglas' claims are procedurally defaulted, and that all of Douglas' claims lack merit. (*See* Resp., ECF No. 32.)  The Court addresses each of those defenses in detail below.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

### III

### A

Respondent begins by arguing that the Court lacks subject-matter jurisdiction over Douglas' petition for two reasons. (*See* Resp., ECF No. 32, PageID.3591-3595.) The Court declines to dismiss Douglas' petition on either basis.

Respondent first repeats an argument from the earlier-filed motion to dismiss that the Court lacks subject-matter jurisdiction "because at the time Douglas filed his habeas petition, he was still engaged in direct-appeal proceedings in the state courts." (*Id.*, PageID.3572.)  The Court rejected that argument in its order denying the motion to dismiss (*see* Order, ECF No. 31), and the Court stands by its reasoning and conclusion.

Respondent next argues that even if the Court had subject-matter jurisdiction when Douglas filed his initial petition, the Court now lacks subject-matter jurisdiction over Douglas' claims because they have become moot.  Respondent's argument is straight-forward.  Respondent says that (1) the state trial court entered the April 2015 Judgment on April 15, 2015, (2) Douglas filed his initial habeas petition in this Court on January 25, 2019, (3) after Douglas filed his petition, the

11

state trial court vacated the April 2015 Judgment and issued a "new judgment of sentence on December 15, 2021" (*i.e.*, the December 2021 Judgment), and (4) the December 2021 Judgment moots all of Douglas' claims because those claims seek relief from the now-vacated April 2015 Judgment. (*Id.*, PageID.3591-3593.)

If Douglas had not filed an amended petition, Respondent's argument that Douglas' claims are moot may have been right.  When a state prisoner is re-sentenced, the re-sentencing "le[ads] to a new judgment," and as such, the prisoner is in custody pursuant to that new judgment. *Magwood v. Patterson*, 561 U.S. 320, 332 (2010).  And the entry of a new judgment of sentence may moot earlier-filed claims seeking relief from an original judgment of sentence that has been superseded by the new judgment.[3]

But here, Douglas' amended petition cured any mootness problem that may have arisen upon entry of the December 2021 Judgment.  Here's how.  Douglas filed the amended petition after the state court entered the December 2021 Judgment, and he identified and sought relief from the December 2021 Judgment in the amended

---

[3] *See*, *e.g.*, *Pruitt v. Wilson*, No. 06-cv-3048, 2008 WL 5378341, at *12 (N.D. Ohio Dec. 19, 2008) (explaining that "any claim based on any alleged error in the 2004 sentence . . . is now moot, because that sentence is simply no longer the legal basis for [petitioner's] incarceration."); *Wright v. Rivera*, No. CV-06-1725, 2007 WL 4264547, at *1 (E.D.N.Y. Nov. 30, 2007) (holding that petitioner's challenge to his sentence was moot because he had been re-sentenced); *Johnston v. Berghuis*, No. 14-11921, 2015 WL 1646648, at *1 (E.D. Mich. Apr. 14, 2015) (holding that the petitioner's challenge to his sentence was moot upon re-sentencing).

petition. (*See* Am. Pet., ECF No. 11, PageID.90.)  The amended petition was, in effect, a supplemental pleading under Rule 15(d) of the Federal Rules of Civil Procedure because the allegations in that petition concerning the December 2021 Judgment arose out of events that occurred after the original petition was filed.[4]  And such a supplemental pleading may cure a mootness issue that has arisen with respect to an original pleading, like the original petition here. *See Doe v. Comm'r*, 344 F.R.D. 57, 62–66 (D.N.H. 2023) (collecting cases for proposition that supplemental complaint can "cure [a] mootness" issue that arises after original pleading is filed); *Progme Corp. v. Twenty-First Century Fox*, 2020 WL 1445808, at *3 (E.D. Mich. Mar. 25, 2020) (allowing party to amend to "cur[e]any mootness issues" that may have arisen after the filing of the complaint). *See also Scahill v. D.C.*, 909 F.3d 1177, 1183–84 (D.C. Cir. 2018) (holding that a plaintiff may cure an Article III jurisdictional defect "through an amended pleading alleging facts that arose after filing the original complaint."). Simply put, the allegations in the amended petition concerning the December 2021 Judgment cured any mootness problem that have arisen with respect to Douglas' original petition seeking relief from the April 2015 Judgment.

---

[4] Under Rule 15(d), a court may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).

**B**

Next, Respondent argues that the majority of Douglas' claims – Habeas Claims II through VI – are procedurally defaulted. (*See* Resp., ECF No. 32, PageID.3596-3615.)  The Court agrees.

The Sixth Circuit "has adopted a four-part test to determine whether a claim has been procedurally defaulted":

> (1) the court must determine that there is a state procedural rule with which the petitioner failed to comply; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) the state procedural rule must have been an adequate and independent state procedural ground upon which the state could rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for his failure to follow the rule and that actual prejudice resulted from the alleged constitutional error.

*Ivory v. Jackson*, 509 F.3d 284, 291 (6th Cir. 2007) (quoting *Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002)).

Here, review of these claims is procedurally barred because the state trial court rejected them on an independent state procedural ground, and Douglas has failed to show either the required cause or prejudice to overcome that state court rejection. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  First, the state trial court denied Douglas relief on these claims, in part, because he failed to demonstrate good

cause or actual prejudice from the failure to raise the claims on direct appeal as required by Michigan Court Rule 6.508(D)(3). (*See* State Ct. Order, ECF No. 26-19, PageID.2201.)  That basis for the state court's decision constitutes an independent and adequate state procedural ground, resulting in a procedural bar to a review on the merits in this action.[5] *See Ivory*, 509 F.3d at 292–93.   Moreover, Douglas concedes that the claims he raised in his state-court motion for relief from judgment are procedurally defaulted. (*See* Reply, ECF No. 42, PageID.3778) ("Petitioner concedes that the trial court['s] rejection under MCR 6.508(D)(3) does procedurally bar [Habeas Claims II through VI] as the state claims.").   The Court therefore concludes that Habeas Claims II through VI are procedurally defaulted.

To demonstrate an entitlement to federal habeas review of these defaulted claims, Douglas must establish either (1) "cause for the default and actual prejudice" from the alleged constitutional violation, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Douglas has not satisfied either of these requirements.

---

[5] The fact that the state trial court also discussed the merits of some of Douglas' defaulted claims in addition to invoking Michigan Court Rule 6.508(D) does not change the Court's analysis. *See Northrop v. Horton*, 779 F. App'x 312, 315 (6th Cir. 2019).

**1**

The Court first turns to cause and prejudice.  Douglas claims that his appellate counsel's ineffectiveness in failing to raise his post-conviction claims on direct appeal constitutes the required cause and excuses his default. (*See* Reply, ECF No. 42, PageID.3778. *See also Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) (holding that ineffective assistance of appellate counsel may constitute cause excusing a procedural default)).   As the Sixth Circuit has explained, a court reviews *de novo* whether ineffective assistance excuses a procedural default:

> "An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). In particular, "[t]he latter must meet the higher AEDPA standard of review, while the former need not." *Id.* at 237; *see also, e.g., Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 225 (6th Cir. 2019); Joseph v. Coyle, 469 F.3d 441, 459 (6th Cir. 2006). Thus, we review *de novo* the question of whether ineffective assistance of appellate counsel excuses [the petitioner's] procedural default.

*Chase v. MaCauley*, 971 F.3d 582, 591–92 (6th Cir. 2020).

"'In order to show ineffective assistance of counsel excusing a procedural default,' [courts] generally require a defendant to," among other things, "'show that his . . . counsel's failure to raise the claim rose to the level of a constitutional violation' under *Strickland v. Washington*, 466 U.S. 668 (1984)." *Id.* at 592 (quoting *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004)).  "*Strickland* sets forth a

two-prong analysis for assessing ineffective-assistance-of-counsel claims: 1) 'the defendant must show that counsel's performance was deficient,' and 2) 'the defendant must show that the deficient performance prejudiced the defense.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).  To meet the first *Strickland* prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and he must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 688–89 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  The "prejudice" component of a *Strickland* claim "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  Prejudice under *Strickland* requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Moreover, an attorney is not required "to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003); *see also Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*,

908 F.2d 56, 59 (6th Cir. 1990). Indeed, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751–52). Thus, a failure to raise a claim on appeal will generally constitute deficient performance only if the omitted claim is "clearly stronger" than the claims raised on direct review. *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," that is, an issue that was "obvious from the trial record" and "would have resulted in a reversal on appeal." *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Douglas has failed to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Douglas complains that his appellate counsel failed to sufficiently investigate his case. More specifically, he says that his appellate counsel failed to discover and present on appeal arguments based on new "affidavit testimony" that Douglas says "directly contradicts inculpatory trial testimony of the state's main witness/complainant." (Douglas Letter, ECF No. 37, PageID.3699.) In support of his assertions, Douglas attached a letter from his appellate attorney to the Michigan Attorney Grievance Commission, explaining in

great detail her appellate strategy.[6] (*Id*. at PageID.3701.)  In relevant part, the letter

explains appellate counsel's reasons for not conducting additional investigation:

> To understand the alleged failures to investigate any of the evidence against Mr. Douglas, specifically the claims that there were witnesses to interview or video to obtain from the coney island, gas station or motel that might have been helpful, you must first understand the evidence the prosecution presented in this case.
>
> Mr. Douglas was convicted as charged of one count of first-degree criminal sexual conduct, and one count of third-degree criminal sexual conduct for the sexual assaults of 16-year old [Jackson], unarmed robbery for stealing her phone and a misdemeanor assault. According to Miss Jackson three men were involved – Charles Douglas, his brother Kejuan Douglas and a third unidentified man.
>
> It is important to note that at the outset Mr. Douglas testified at his trial and admitted then and subsequently to having sex with Miss Jackson (this goes to the CSC 3 conviction) and to taking her phone (the unarmed robbery).  His defense to the charges has been consent to the sexual activity and the phone not being stole because it was eventually returned to her.  Additionally, he has claimed that the first-degree criminal sexual conduct incident, which Miss Jackson testified was committed by the codefendant Kejuan Douglas, did not happen as there was nobody else present in the vehicle.
>
> Given that Miss Jackson was 16 at the time of these incidents she was unable to legally consent to sexual activity.  Mr. Douglas's admission was therefore an

---

[6] While this letter is not part of the state-court record, federal habeas courts may consider new evidence when deciding whether there is cause and prejudice or actual innocence to excuse a procedurally defaulted claim. *See House v. Bell*, 547 U.S. 518, 537–38 (2006).

admission of guilt.  Mr. Douglas admitted at trial that he took her phone.  Mr. Douglas's admission was an admission of guilt.  Miss Jackson testified three men were present in the vehicle and Kejuan Douglas was convicted of committing the sexual assaults.  Thus, the jury believed Miss Jackson that at least one other man was present in the vehicle and that man sexually assaulted her.  Mr. Douglas was convicted of this sexual assault as an aider and abetter.

Mr. Douglas's continuing claim is that the victim is a liar as according to him, she falsely accused someone of a sexual assault on an airline flight. Witness credibility is an issue for the trier of fact, not an issue for appeal. Credibility was not an issue at trial for the two counts where Mr. Douglas admitted his guilt.

[…]

Obtaining video tapes from the coney island, gas station and motel, stops that Tia Jackson said Mr. Douglas made while she was in the vehicle, had no bearing on the sexual assaults that happened in the vehicle. Whether those stops happened does not have any impact on the case as the sexual assaults happened when Mr. Douglas pulled on to a deserted street. As for the motel stop, there was a text on Mr. Douglas's phone, from the victim, saying "can you please take me home? I'm not trying to come to the room with you." This text arguably corroborates the stop at the motel.

Mr. Douglas ADMITTED to two of the three counts. His challenge appears to be only to the most serious count, first-degree criminal sexual conduct, where he was convicted as an aider and abettor. There is no legal or factual basis to discredit the victim's testimony that Kejuan Douglas, and another man were present in the van. Kejuan Douglas was convicted of two counts of first-degree criminal sexual conduct and remains in prison. Mr. Douglas was present during this sexual assault and was engaged in the entire criminal incident.

(*Id*., PageID.3701-3703.)

In sum, appellate counsel concluded that the issues that Douglas requested to raise would have had little impact on his appeal.  Appellate counsel, based on her expertise and experience, did raise two other claims on direct appeal: (1) an alleged due process violation arising out of the prosecutor's introduction of Rule 404(b) evidence and (2) sentencing error.  And, notably, the Michigan Court of Appeals did remand the case on the sentencing issue, and the state trial court eventually re-sentenced him.  Finally, none of the claims that Douglas says that appellate counsel should have raised were "dead-bang winners."  For all of these reasons, Douglas has not shown that his appellate counsel erred and/or that he was prejudiced by counsel's conduct.  Thus, he has not established cause or prejudice that could excuse his procedural default.

**2**

Douglas has also failed to demonstrate that a fundamental miscarriage of justice has occurred.  The miscarriage-of-justice exception requires a showing that a constitutional violation probably resulted in the conviction of a person who is actually innocent.  *See Schlup v. Delo*, 513 U.S. 298, 326–27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  In order to make a showing of actual innocence under *Schlup*, a

21

petitioner must present new evidence showing that "it is more likely than not that no reasonable juror would have convicted [the petitioner]." *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (quoting *Schlup*, 513 U.S. at 327 (addressing actual innocence as an exception to procedural default)).   "As for reliability, the *Schlup* court illustratively listed 'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence' as examples of 'reliable evidence.'" *Hubbard v. Rewerts*, 98 F.4th 736, 743 (6th Cir. 2024) (quoting *Schlup*, 513 U.S. at 324).   A court must survey "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell*, 547 U.S. 518, 538 (2006) (cleaned up).   The Court must then "assess the likely impact of the evidence on reasonable jurors" rather than make an "independent factual determination about what likely occurred." *Id*.

In support of his actual innocence claim, Douglas points to affidavits from Daren Granger, Damion Waters, Kejuan Douglas, Tashunda Newborn, Tarrell Lee, and Tyler Darden as newly discovered evidence. (*See* Resp., ECF No. 28, PageID.3781-3782, attaching affidavits; Reply, ECF No. 42, PageID.7381-3782, referencing affidavits.)   After careful review, the Court is not persuaded that the affidavits are sufficient to establish Douglas' actual innocence.

First, the affidavits submitted by Waters, Kejuan Douglas, and Newborn are not persuasive evidence of actual innocence. The Waters affidavit (*see* Waters Aff., ECF No. 28, PageID.3521-3522) was signed on January 11, 2023 – eight years after the trial – and describes a version of events inconsistent with Douglas' testimony that no one else was present in the van during the sexual encounter. (*See* 02/07/2015 Trial Tr., ECF No. 26-14, PageID.1932.) New statements from witnesses years after a crime are inherently suspect. *See Schlup*, 513 U.S. at 331. Moreover, Waters' affidavit would require a jury to believe Waters' statements over Douglas' own testimony, which would seriously undermine Douglas' credibility.

Kejuan Douglas' affidavit (*See* Kejuan Aff., ECF No. 28, PageID.3527-3531), is also not strong evidence of actual innocence because he was a co-defendant in Douglas' criminal case and was convicted of first-degree criminal sexual conduct. *See Allen v. Yukins*, 366 F.3d 396, 405 (6th Cir. 2004) (concluding that post-conviction affidavits of habeas petitioner's two co-defendants were legally insufficient to establish that petitioner was actually innocent, and explaining that "postconviction statements by codefendants are inherently suspect because codefendants may try to assume full responsibility for the crime without any adverse consequences"). Moreover, Kejuan Douglas' affidavit does not exonerate Douglas, but rather speaks to Kejuan's own innocence. Therefore, it is largely unhelpful to Douglas.

Newborn, like Waters, signed her affidavit several years after trial, on December 11, 2020. (*See* Newborn Aff., ECF No. 28, PageID.3532-3533.) Given the passage of time, her statements are not strong evidence of actual innocence. Newborn avers that she was with Kejuan Douglas on August 16, 2013, and that Kejuan did not get in the van with Douglas. None of the facts in Newborn's affidavit speak to Douglas' guilt or innocence. For these reasons, none of those affidavits are likely to have impacted the jury's decision on Douglas' guilt.

Second, the affidavits of Lee, Darden, and Granger provide, at most, evidence that could be used to impeach the victim's testimony. Impeachment evidence generally does not provide sufficient evidence of actual innocence to support a free-standing innocence claim or to excuse a procedural default. *See Calderon v. Thompson*, 523 U.S. 538, 563 (1998) (newly discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence); *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992) (newly discovered impeachment evidence "will seldom, if ever," establish actual innocence).

Considering the available evidence, Douglas has failed to establish that it is more likely than not that no reasonable juror would have convicted him based on the affidavits he has submitted. Douglas is therefore not entitled to relief from Habeas Claims II through VI.

24

## C

The Court next turns to Habeas Claim I.[7]  Douglas argues that the state trial court violated his due process rights by allowing the prosecutor to introduce other-acts evidence under Rule 404(b) of the Michigan Rules of Evidence that was not discovered or disclosed until after jury selection.  Specifically, he argues that the admission of evidence showing that his DNA matched DNA obtained in another sexual assault case in 2013 unfairly prejudiced his defense because he lacked sufficient notice.  Douglas raised this claim on direct review and the Michigan Court of Appeals concluded that Douglas was not unfairly prejudiced by the newly discovered evidence:

> Charles asserts that he was unfairly prejudiced for three distinct reasons. First, Charles argues that unfair prejudice resulted because defense counsel did not have the opportunity to ask questions during jury voir dire "to ensure that jurors hearing [the other-acts] evidence could keep an open mind and not immediately conclude that [Charles] was guilty . . . ." Charles does not indicate what additional questions counsel would have needed to ask to

---

[7] Respondent argues that Habeas Claim I is procedurally defaulted, in part, because Douglas failed to exhaust the substantive challenge to the admission of the other-acts evidence in the state courts, and now Douglas has no available means to exhaust that claim. (*See* Resp., ECF No. 32, PageID.3598-3600.)  The Court declines to address that defense as it is not a jurisdictional bar to review of the merits. *See, e.g., Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). As the Supreme Court has explained, "[j]udicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). Such is the case here.  The Court will therefore address the merits of the Habeas Claim I in its entirety.

protect his right to a fair trial. The record discloses that the trial court and the attorneys adequately questioned the jury venire, and the trial court sufficiently instructed the potential jurors to ensure that they remained open-minded and understood the presumption of innocence. Moreover, before the jury heard the other-acts evidence, the trial court gave a cautionary instruction explaining the limited purpose of the evidence, which limited the potential for any prejudice. The trial court's instruction included the directive that the jury "must not convict the defendant here because you think he's guilty of other bad conduct," which directly addressed Charles's concern that the jury would assume that he was guilty because of the other act. Again, juries are presumed to have followed their instructions, *Breidenbach*, 489 Mich. at 13, and there is no indication that the trial court's cautionary instruction was not effective in this case. Charles simply has not demonstrated that he was prejudiced as a result of the allegedly inadequate voir dire questioning.

Second, Charles argues that he was unfairly prejudiced because defense counsel "had no opportunity to make an effective choice of trial strategy. . . ." Defendant did not move for a continuance as a result of the newly discovered evidence, and we can discern no unfair prejudice from its admission. We agree that the other-acts evidence was impactful. However, for relief to be warranted here, defendant must have suffered unfair prejudice caused by the delay itself, not merely because of the impact of the evidence. Charles offers no argument for how his trial strategy would have differed had he known about the other-acts evidence before trial. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v. Kelly*, 231 Mich. App 627, 640–641; 588 NW2d 480 (1998).

> Lastly, in an additional cursory complaint, Charles claims that defense counsel's inability to address the other-acts evidence in his opening statement "likely created the impression that [he] had no answer to such evidence and embarrassed the defense no matter what argument defense trial counsel subsequently made." It is difficult to conclude, however, that this situation created significant prejudice, given that the prosecutor was also unable to address this evidence in his opening statement. In addition, Charles's defense theory was consent. The new evidence did not negate that defense. Thus, Charles has not explained how he was unfairly prejudiced. Because the record does not establish any unfair prejudice to the defense, the trial court did not abuse its discretion in admitting the newly discovered other-acts evidence.

*Douglas*, 2016 WL 6495285, at * 3–4.

Douglas has failed to show an entitlement to relief on this claim for two reasons.  First, to the extent that Douglas seeks relief from the state trial court's decision to admit the other-acts evidence under Michigan law and the Michigan Rules of Evidence, such violations of state law are not cognizable in federal habeas proceedings. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Serra v. Michigan Dep't of Corrs.*, 4 F.3d 1348, 1354 (6th Cir. 1993).

Second, to the extent that Douglas claims that the admission of the other-acts evidence, by itself, violated his federal due process rights, his claim still fails.  The Supreme Court of the United States recently reiterated that it is clearly established

"that when 'evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief.'" *Andrew v. White*, 145 S. Ct. 75, 78 (2025) (quoting *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)). Here, the Michigan Court of Appeals did not unreasonably conclude that the admission of this evidence was not so "unduly prejudicial" that it rendered Douglas' trial "fundamentally unfair." Douglas is therefore not entitled to habeas relief on his due process claim.

## IV

Douglas has also filed a request for discovery and evidentiary hearing (ECF No. 41) and a motion to allow additional evidence (ECF No. 44). Douglas not shown an entitlement to any of that relief. Accordingly, Douglas' request for discovery and an evidentiary hearing and his motion to allow additional evidence are **DENIED**.

## V

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless the Court issues a certificate of appealability under 28 U.S.C. § 2253. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court

28

**DENIES** Douglas a certificate of appealability because jurists of reason would not debate the Court's conclusion that Douglas has failed to demonstrate an entitlement to habeas relief.

Although the Court declines to issue Douglas a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). A court may grant *in forma pauperis* status on appeal if it finds that an appeal is being taken in good faith. *See id*. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). Although jurists of reason would not debate this Court's resolution of Douglas' claims, an appeal could be taken in good faith. Therefore, Douglas may proceed *in forma pauperis* on appeal.

## VI

Accordingly, for all the reasons stated above, the Court:

(1) **DENIES WITH PREJUDICE** Douglas' amended petition for a writ of habeas corpus (ECF No. 11);

(2) **DENIES** Douglas' request for discovery and an evidentiary hearing (ECF No. 41) and his motion to allow additional evidence (ECF No. 44);

(3) **DENIES** Douglas a certificate of appealability; and

(4) **GRANTS** Douglas permission to appeal *in forma pauperis*.

**IT SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  May 15, 2025


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 15, 2025, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126